Good morning, your honors. It may please the court, Artis Michele v. Fitzgerald Guillermo Gomez-Sanchez, with your permission, I'd like to reserve three minutes for rebuttal. Your honors, the government's own concessions in this case would require a reversal of the board's decision. The board here held that, quote, a person's mental health is not a factor to be considered in a particularly serious crime analysis, end quote. But the government concedes that, page 42 of its brief, this common sense suggests that mental health has an impact on subjective intent. It also concedes, in case law clearly establishes, that intent is relevant to a particularly serious crime analysis. Sorry. Well, your honor, the matter of L is... Your crime can be dangerous, serious, regardless of intent, and we could say that perhaps the cops are dangerous, and whether or not by accident, that shouldn't be a matter, because you're right here to protect the public. And therefore, why is that highly unreasonable? No, I don't think so. Your honor, the board precedent in this court's precedent book acknowledges that subjective intent is relevant. In the matter of L.S., which is a non-bond decision of the board, the individual was convicted of alien smuggling. He had put a person inside a small compartment underneath his bed to smuggle her over the border. It's an inherently dangerous crime, and the board so held. It put the woman at risk. It put American lives potentially at risk. And the board said, it is dangerous, to your point, your honor. It is dangerous. That's not the question. The question is, is it so dangerous to justify the presumption that he should not be protected for persecution or torture? That's the precise question. And the board found, no, it was not, and found extremely relevant the fact that he did not intend to harm her. Similarly, in Alphonse v. Holder, this court looked at a man convicted of a crime of resisting arrest of an executive officer. The elements of that include resisting through force or, finally, resisting through force or violence. An executive officer, again, an inherently dangerous crime, to use the wording of the board. And the court remanded the case because it did not understand the board's rationale, which found it extremely relevant, that there was no record of his intent to actually harm the officer. So the precedents indicate that intent to harm is a piece of the puzzle because the court must, the immigration judge must look at all relevant evidence, all reliable evidence, including the underlying circumstances of the crime. If that's the case, then Mr. Gomez-Sanchez, you have to have a right to present all reliable evidence regarding his mental health in order to assess the case. So you mean if Ali gets to prove that every one who commits one of these crimes gets to prove subjective intent to commit a crime, some gets to only try the case? So this does not require retrying the case. It's not particularly in this case, right? This crime? The mental insanity or lack of competence is part of the definition of the crime, right? Yes, Your Honor. If it's an insanity defense, which was placed in the crime of the body,  Your Honor, this does not require reallocating the case. The case of Mr. Gomez-Sanchez does not challenge that he was guilty of the crime. The crime required that he be found not guilty by reason of insanity. If it was found that he could not see the difference between right or wrong, that he be found not guilty by reason of insanity, he didn't raise that defense, and we're not raising it here. He may have known that swinging an instrument, which is all he was convicted of specifically intending to do, swing an instrument, was knowing a wrong. An objectively reasonable person would have found that a significant risk of harm was likely to occur, but the requirement is for 245-A convictions. And you're not trying to vacate his conviction at this point, are you? No, Your Honor, not at all. We're simply trying to say that his mental state at the time of the crime Well, I didn't do that. In any case, they found him. Because they say, well, I was convicted of this crime, but I didn't have the requisite mental state. Even though it was found to have the requisite mental state in the conviction, I'm going to show that I really didn't. Your Honor, but I didn't have the mental state to I didn't have the intention, the subjective motivation to harm somebody. It's not the requisite mental state for the conviction, but the subjective intent to do harm to this person. And, yes, all reliable evidence must be accepted by an immigration judge. Whether an immigration judge or a court is going to be convinced is a matter for those judges. We're not asking this panel to pass on the ultimate issue. Only hold that the immigration judge and the court are required to consider all reliable evidence, including the subjective motivation of the person to do harm, to do violent harm. So what is the difference between what the criminal court must have found in evidently concluding that his mental health didn't prevent him from performing the intent required for conviction, and what you're arguing the court should have considered? Certainly, Your Honor. So, again, as I mentioned, the conviction does not require any specific intent. It's a general intent crime, not a specific intent to harm the victim. So the criminal court, by definition, did not find, one way or the other, that Mr. Guillermo Gomez-Sanchez intended to harm the individual that came across the street and talked to him that day. And what we would like to present to the immigration judge and have the judge consider is, for instance, the evidence of his mental health, like at 426 of the record, that he suffered from, quote, delusional misidentification, the belief that the identity of a person, object, or place has been altered. That's one of his symptoms. Mr. Gomez-Sanchez told the government psychiatrist that he thought he was wielding a stick, not a dumbbell. He told his mother the same thing, and that's all in the record, is he thought, by reason of his mental health, that he was wielding a stick that goes to the level of harm he can be implied to have intended to have committed. Yes, wielding a stick is dangerous as well, but not as dangerous as wielding a dumbbell. And immigration judges are required to consider all these factors in weighing whether our obligations under our refugee treaty must be met versus our obligations to the state. So the idea is that they will commit exactly the same crime in exactly the same way, but be taken differently for obligation purposes, depending on what they can come up with in their head. Well, the immigration judge is not a guy who does exactly the same thing as your client. He would, you know, could be treated differently if everybody who commits an aggravated felony would then have the chance to prove unknown in three minutes. In fact, there is a specific rule outlined here in Indiana in this court. This court specifically said that Congress's intent, it said one of Chevron, that Congress's intent was that all these cases be treated case by case, that no categorical forms of presumptions can be permitted. That was not Congress's intent. So it sounded like part of your argument, though, was that this crime did not have a specific intent element. So are you saying that the BIA couldn't even have a rule that eliminated mental health evidence in specific intent crimes? It's not an issue in this case, Your Honor, and I'm not prepared to go that far, because categorical rules in general should be met with great skepticism in this statute. Because Congress's intent that they be met case by case, I can certainly imagine a situation where a domestic violence survivor commits a harmful battery upon her abuser and for whatever reason, she might deem that she's guilty to it, maybe she doesn't want to relive the incident at trial, whatever, and she doesn't want to challenge her specific intent to do harm. Should she be able to raise the fact that she has been diagnosed with battered women's syndrome as a mitigating factor for determining whether the crime justifies the presumption that she's too dangerous to protect? And I would argue yes. But it's not before this Court in this case, Your Honor, that I made this argument, Your Honor. What's this case, Your Honor? So the matter of L.S. is... Who is L.S. in this case? The Alphalenza Stateholder, the resisting executive officer. You might have also mentioned one, do you know, just now. I think you were talking about the case-by-case review. So, it's true. So Blandino-Medina examined the case where the board said, just look at the elements of the crime and decide based on the elements of the crime, if it's a particularly serious crime. And Blandino-Medina looked at a number of things and determined that Congress's intent was that these cases be adjudicated over three sort of different rationales than the statute. The withholding statute itself, which is the implementation of our refugee treaties, does not authorize, in its language, a case by regulation, speaking of these cases. There is a similar provision in the asylum statute that said, and it reads the same way, a particularly serious crime, speaking of treaties, such and such, it authorizes the Attorney General, by regulation, to determine cases to be particularly serious. And the court in Blandino-Medina said, these laws were passed at the same time in the 1996 IHRA amendments to the Act. Congress could have put the by regulation provision in the withholding version as well, but didn't. And that means they intended for these cases to be adjudicated case by case. It also looked at the fact that this was passed during IHRA. A law that it acknowledged in the matter of LDS, which the court acknowledged this too, was a law that virtually cross-court granted strict rules for certain consequences for criminal acts in the immigration world, except for this one area, it likened them. It restricted immigration judge discretion, except for this one area, where it increased them. And it found that Congress's intent here was a very serious concern with our compliance with our refugee treaty, and giving judges the tools to strike that balance between the treaty obligations and our obligation to protect our community effectively. Together with seeing that I have three minutes remaining, I'd like to reserve the rest of my time for a bottle of milk, unless you have other questions. Okay, we're going to move on. Thank you. Thank you. Good morning, your honors. May it please the court, I'm Carmel Morgan, on behalf of the respondent, the U.S. Attorney General. The government asks that you give Chevron deference to the board's published and reasonable determination that an alien's mental health as a factor in a criminal act comes within the purview of the criminal courts and should not be considered in determining whether the alien has committed a particularly serious crime for immigration purposes. In Glendino, the rule that the court established, it seems to be, is that you can't have a crime other than an aggravated felony with a five-year sentence or more designated as a per se categorical particularly serious crime. You need to get that down to a six outside the category of aggravated felonies. It's crimes that don't fall within the category of aggravated felonies. Using this Glendino-Medina, that's what it is. Well, it's looking at a category of crimes, and here we're looking at limiting a type of evidence. I don't think they're the same thing. I don't think the statute disallows the attorney general through the board to exercise his discretion to limit a particular type of evidence in these cases. It's not like a categorical bar specifically referencing a particular crime. But how do you deal with Cone, New, or however that case is pronounced then? In that case, we're looking at sentence enhancements and whether you can have a categorical rule that you cannot look at sentencing enhancements. Is that a type of evidence? Why is that? It is a type of evidence, but it's specifically enumerated in the sentence view factors or the factors in matter of NAM that you look at the type of sentence imposed. So it's quite obvious from the board's own precedent that a sentence enhancement would be a type of sentence imposed. You have to look at that in the case-by-case analysis. The board said in the rules that we are considering that adjudicators are constrained by how mental health issues were addressed as part of the criminal proceedings. How does that square with NAM that talks about including but not limited to the record of conviction and sentencing information? That was also language used in matter of LS, which suggests that it is reliable information for hearing purposes. It is greater than or can be greater than what was addressed in the criminal proceeding, which here was competency to proceed and the opportunity to raise an insanity defense. How do those square up? I think the difference here, and what the board was trying to explain, they don't want to relitigate things that have already been decided by the criminal court. So what was decided by the criminal court in this case? The alien would be necessarily relitigated when the appellant says, we don't want a second bite at the apple. We're not contesting the validity of the conviction. It is a bit confusing. Certainly you can relitigate criminal culpability. I'm not entirely sure, but it seems like the petitioner wants to address maybe moral culpability, but that's not relevant to a particularly serious crime analysis. What you can't do is to go back and negate or refute the mens rea element, which has already been decided by the criminal court. It's a general intent, but in 245A1, assault with a deadly weapon, I think you have an intent to make an action that would likely result in serious harm to the victim. That type of intent has been found by the court in matter of lieu, which I referred to in the 28-J letter I supplied recently, to be morally dubious. And it's been determined by this court to be a crime of violence as well. That's not the end of the matter, but it's certainly a good beginning point. Matter of lieu was about the question. Maybe it's about a different question, right? It's about moral turpitude instead of a particular serious crime. Well, but the alien here, I think, is arguing that he wants to present mental health evidence to show that he didn't have an evil intent. And matter of lieu is saying when you're talking about 245A1, which is his crime in this case, it necessarily involves an evil intent. Well, for moral turpitude purposes. But in LS, the board said that we look at a time when figuring out a particularly serious crime. So it seems like there's tension at least between the two. I think in LS, what the board was looking at and what this court and the board has said multiple times, harm to a victim, harm to persons, makes it more likely that a crime is particularly serious. In matter of LS, the crime was alien smuggling. The particular crime didn't address intent to harm. It didn't explicitly address that. It does in our case with assault with a deadly weapon. But in alien smuggling, you wouldn't be going against any finding of the criminal court by looking at that intent because it's not encapsulated in the crime itself. You wouldn't be going against any finding here, either, if it wasn't a specific element. But the crime that we're talking about here does address, to some level, moral culpability or evil intent, as explained in matter of lieu. What you're saying is that the general intent is sufficient to ease the general intent to cause harm. Whereas, in the smuggling statute, the general intent, whether the intent is to cause harm, it's to smuggle people in. Right. In the smuggling case, matter of LS, the intent had to do with whether you knew the alien was not authorized to enter the United States. So it wasn't going potentially to refute an intent element decided by the criminal court, as it does here. Do you agree that it's required to do the case-by-case analysis, and that case-by-case analysis presumably includes an applicant's ability to present all reliable information in that ballpark? Doesn't that include, as I think your briefing suggested, evidence of mental state and intent? But you've precluded consideration of mental health in all cases. So I'm not clear what your position is on how you can have that case-by-case analysis. In this case, it's still a case-by-case analysis because the board went through the scientific factors, the nature of the crimes, the facts and circumstances underlying the conviction, and the type of sentence imposed. It's a different situation. It's true that the board and this court have said you can look at all reliable evidence, and the government isn't contesting that he has a sad and long history of schizophrenia. That's true, and that's reliable, and he's got the medical documentation. The reason why you don't introduce it here are familiar principles. One has to do with collaterally attacking a criminal conviction at immigration court, which you cannot do. And another, in this case, is relevance. The fact that he was mentally ill doesn't lessen the danger that he poses to the community. And so for those two reasons, the board said, we're not going to look at mental health evidence in this case. Why can't it be something that's considered a case-by-case? And then, I mean, and I, Jake, could say I don't think this mental health evidence lessens the danger in this case, and so he's still dangerous, and it doesn't help you. But maybe there is a case in which mental health might affect dangerousness in some hypothetical. And it seems like our case-by-case analysis, our case-by-case requirement is really intentioned with this blanket prohibition that the board has adopted. I suppose the board could have come to a different conclusion, but the question for this court is whether you give the board Chevron deference and whether their decision is reasonable. And I think that it is. Courts have struggled with mental illness and evidence, and I think it's all right. I mean, I think if we got to the statute's ambiguous, so is it reasonable to have a rule that mental health doesn't affect dangerousness? That's a different question than whether the statute's ambiguous in the first place. And I'd like to return to your answer to my question about CONU, because I don't really understand. So you said the difference is that in FRENTESCU, one of the factors is still a contingency in cancer, but FRENTESCU also says you have to look at the circumstances and underlying facts of the conviction. And I don't understand why someone's mental health isn't one of the circumstances or facts of the underlying event. It seems to me to be more like personal circumstances of the offender, which the board has said you don't look at in a particularly serious crime analysis. It's really not like sentencing where the mitigating factors go toward personal circumstances of the offender. The board has already said we're not looking at personal circumstances of the offender. We're not looking at family ties. We're not looking at the risk of persecution. We're looking at the crime and whether the crime is dangerous, not whether the criminal is dangerous and not whether he poses a future danger. There's no separate test for future dangerousness. It's really confined to looking at the crime that was committed. And you said earlier that the mental disability doesn't lessen the danger to the community, given that there are all sorts of shades of mental disability, mental illness, treatments, and consequences of symptoms. Why can that generality be applied simultaneously with a case-by-case analysis, allowing the applicant to present whatever it is that indicates that their mental state or condition presents a different kind or less than dangerousness to the community that would qualify them as particularly serious crime and doesn't disqualify them from non-removal? The government's reading of this case, let's say that the crime here was the same, the alien smuggling crime. I think the board's decision might allow some evidence of his intent, as it did in the matter of LS, to come in. What you can't do is pursue the mens rea, decided by the criminal court. I'm not sure that it's a ban altogether on, I think it's medical documentation and reliance on generalizations about a mental disease. But if someone had medical documentation that their mental disease prevented them from performing an intent, that would have to come in under LS, wouldn't it? I think that would have to come in in the criminal court context. I think it's reasonable for the board to say, we're not going to look at it because the alien had multiple opportunities. You were coming down the path that if this crime was the same crime, again, as in LS. LS tells us you have evidence of intent has to be allowed to come in. So if through a mental health documentation, through a doctor is you can't have an intent, how could that possibly not come in? Well, I think in LS it was the intent to harm the victim. Here, the victim was hit in the head and got stitches. Right, right. It should have failed. But in the hypothetical of LS, we're back at LS. LS, say the person at LS brought in medical documentation that they couldn't have intended to harm the person in the trunk. That comes in, doesn't it? I think not. But I think you could have some evidence. If you look at Clark v. Arizona, the U.S. Supreme Court decision, they seem to talk about a difference between capacity versus observational evidence. I mean, here the witness, who was the victim, describes that he didn't think the petitioner was all there. I don't think the board said you can't consider that. It's just slightly different, right? I mean, let's say he concedes, yes, I was dangerous, I did something dangerous, and I concede that statement. I've changed. I've not had medication or so on. Why would this necessarily actually mean that when it goes to the area, when it comes to the car, when it comes to something that must have had a good opinion, what about I'm saying, well, okay, that was them, this is them, right now in the medical care, I'm taking those in here, whether it be the meds I'm taking, I have medication, I'm in the doctor's care, I'm no longer dangerous. What do I have? That has no place under the board precedent about a particular serious crime analysis. It's well established that you're not looking at future dangerousness. The focus of a particular serious crime analysis is on the dangerousness of the crime itself, and once that's been established, it's presumed that the alien is a danger to the community. Irrebuttably presumed. Irrebuttably presumed, yes, yes. ACFR 1208.16b2 sets forth that once a particularly serious crime has been established, there's no separate determination about future dangerousness. You are irrebuttably presumed to be a danger to the community. Maybe for that to make sense, you need to consider whether it really is a particularly serious crime in the way that it will last in terms of dangerousness. I mean, if you're going to treat every particularly serious crime as meaning that the person is dangerous forever, then maybe you need to look at the circumstances of the crime and see if that's true. And the board did look at the circumstances of the crime. They considered the testimony of the victim. Okay, thank you. Your Honor's time. Thank you, Your Honors. Thank you. Thank you, Your Honors. If I may, I'd like to make two points. And if there's time remaining, I'd like to address the last point about future dangerousness. First, regarding the intent requirement, just to clarify, in a general intent crime such as this, the matter of who did not change the integration of California criminal law, there's an intent to commit an act, in this case, swinging an instrument. And then, in a fighting that an objectively reasonable person would have understood that that act was significantly likely to result in harm, not an intent to do harm. And that intent to do harm has been found relevant in other cases. So, to clarify that. I'm sorry, what does that matter? Well, it matters because. If it's an act that is likely to cause harm, why isn't that the intent? I would say that's, yeah, the intent for the kind of person that acts in ways that has the natural consequences of trying to be one. Yeah. And why isn't that the intent? Because, Your Honor, in the en banc panel in LS that articulated it well, and I'm just going to quote them. Quote, a determination of a crime as particularly serious cannot, therefore, be made in a vacuum. It must take into account that an alien convicted of such a crime, and therefore excluded for such relief, would be an alien who would otherwise meet the burden of proof for this relief. Meaning he would otherwise meet the burden of proof that he's going to be persecuted. It's what the matter of LS is. There must be a balance struck between the dangerousness. It's not just dangerousness in a vacuum. This is so dangerous that we will not protect him. And that, and mental, and the board and this board have repeatedly said that the person's subjective motivation is relevant to that analysis because you have to look at all the circumstances. And the reason, to your point, Judge Freeland, that that is important is because that is the only way that this future harm, this failure, this future harm survives. The court on Bonken talk about it. There's a footnote in there, I think, in 17 that says, yes, we've said that. We said it in 1987 under a prior incarnation of the statute. And we've received a brief that says that's not the proper analysis from the United Nations, and we're not going to reach that issue. And you don't have to reach it here, but it does make sense that in order to properly read out this future dangerousness, you must look at all the circumstances of the crime. And that includes subjective intent and motivation when you're the manager. And all it is is that you're able to make a record so that the fact finders, Congress intended, the fact finder has all the factors in front of her and can weigh them and make the best judgment that she can. And that's all you're seeking here, right? You just want to be able to present the evidence so that I, Jay, could decide that this person is dangerous. That's right. And if that happens, then the standard back before this panel at the end of these discussions, standard and entirely free, I just can't afford to say, no, if you've acted with a crime, then with that kind of intent, you are unjustly deemed to be a person that is dangerous. I'm sorry, the board is. Why is that? Somebody's going to shove up those numbers. Why? I mean, the board interpreted the statute. So it is underplayed. Do you know Medina? The step one is Chevron. The night service court has found that the statute is not ambiguous with regards to categorical treatment of these crimes. Well, that was the situation where we're looking to add to the category. The board tried to add to the category. We said we can't do that. But the Congress decided it wasn't a categorical conclusion. But this is a, we're here with a matter of lawfully, and of course the Congress is excluded. The Congress has said it's intended to act as a felony. You're entitled to relief? Exempted. So Medina is not eligible. Well, so you're entitled to relief. You're not entitled to relief except in withholding of removal, in which case you're not, it's a matter of elicits. You're not even entitled to a presumption that you're ineligible. You get a case-by-case analysis. And even if you get to step two, a rule that singles out mental health and mental illness for a different kind of treatment, a different kind of evidence-based treatment, it has to be unreasonable. You couldn't have a rule, if this was a window filing of a visa application, you couldn't have a rule that says someone in a wheelchair can only submit evidence that fits in the window in your visa application. If you don't have a wheelchair, you can walk a bigger step around the building and submit it. You couldn't do that. That would don't single out mental health like that. It has to be unreasonable, Your Honor. Am I right that part of your argument is that undersufferance to the agency has to be consistent, and this interpretation is being consistent with LS? That's right. So LS, again, an en banc panel, and NAM, which is a prior precedent, this decision did not overrule any of them. It said to them, was it legal? It was legal. It instead tries to negotiate some way that they're all to be read together. It's just not possible. NAM is very specific, saying we have historically accepted all evidence. We've let both sides present evidence. That includes someone's lay testimony about, you know, which might be self-serving, but their own lay testimony. That was the case involving the transportation. That's right, Your Honor. So this was not a case where the intent to harm was part of the crime. Nor is this case, Your Honor, intent to harm was not part of the crime. Intent to build an object. Intent to do an act that actually results in harm. That's right. But intent to do, intent to sluggle someone across So you think it's not that crime that has intent to harm or is not an intent to harm. Would it be different? I don't think so. As I mentioned to Judge Freeland earlier, I don't think it's, I think, I would argue the same, I would make the same argument that no categorical rules are permitted. It's not presented here. It's not the same argument. It's not as, if you will, clean as Mr. Gomez because the court didn't consider that intent in this case. But I would argue that that goes against the rule, against categorical treatment of these cases. You're coupling with me when you say, oh, this is not an intent to harm case. Because you would argue the same thing in an intent to harm case. In fact, to be consistent, you would have to argue the same thing. I don't mean that. Even if the intent to harm was not part of the crime, you would say, oh, you have a very little category for your criminal degree. And then you would make the decision that you would, in fact, allow the danger. And I certainly don't intend to quibble. I mean, I didn't solely, I don't think, want to issue in this particular case. But I would be hesitant to agree with the sense, if you can't possibly take a different position in a case like that, I think the rule you're proposing, in fact, would cover that case. But that's how we test the rules in progress. Yes. Because you said, well, you take it to the next case. Is there any other case where it's actually, in fact, an intent to harm? Because I don't think you would say, oh, yes, don't argue the crime. You would argue it necessarily requires an individual's determination that there's no rational distinction between the two. I wouldn't disagree with anything you say or say in that case. You know, we can take this as an intent to harm case.  But I do understand your point that you're seeking to establish a rule that looks at all the elements. It would be better in an intent to harm case where an intent to harm is an element. I don't believe you have to do that to overrule the board here. But, you know, if you take that to the next case, how would they do it without spending on a case? Well, I couldn't really say. At least in a case where the whole thing wouldn't directly conflict with an element of the crime, it has to be case by case. That's right. So for purposes of this case, you can leave aside for another day. I wouldn't help here, because in this case, what if you say, I don't have the mental state, then you would say, I don't think you have the mental state to do an act that escalates also in harm. Because, you know, he thought it was a stick. He didn't think it was a bottle. So he didn't have the mental state. So this isn't about mental state for the crime or for guilt. The equivalency between guilt and particular serious crime analysis doesn't exist. He had the intent requisite for this crime to be guilty of it. Whether he has the requisite intent to be found particularly serious and therefore presumptively dangerous is a different question. And his subjective intent to actually harm somebody, which is a part of the criminal record here, isn't a necessary part of the criminal finding here, is relevant to that. It seems to resolve it on a limited issue. Although I would, as sort of a policy matter, I would be here arguing if there was a blanket rule on specific intent crimes. So for the domestic violence victim example, if there is, I don't see how you can avoid it. I don't see how you can avoid it in that case. You're challenging the categorical rule that's been presented. And you're saying it isn't. No matter how it applies to Gomez-Sanchez, the fact of it is that if you keep a categorical rule in place like that, you can't be having a case-by-case analysis, no matter how those case-by-case analysis come out. Is that your position? Yes, Your Honor. That is consistent with this court's ruling in Arteaga, which is not a withholding case. It's a solution for mobile case, one of these other areas where immigration judges have case-by-case distribution. And that's precisely the tension between the dissent and the majority in that opinion, actually, is whether one of these sort of bright-line rules, when you have case-by-case analysis, undercuts, in a sense, the new entertainment as well. Thank you very much. Thank you.
judges: Kozinski, Friedland, Arterton